Hallows, J.
 

 1.
 
 Was there an adequate administrative remedy?
 
 The defendant contends that the plaintiffs had an adequate administrative remedy which they did not exhaust. In its written opinion the court stated that the plaintiffs were entitled to maintain this suit under sec. 59.97 (8), Stats. While this part of the decision is not in the findings of fact, this court may refer to the opinion to supplement the findings.
 
 Estate of Wallace
 
 (1955), 270 Wis. 636, 72 N. W. (2d) 383. The court on appeal will also assume when a finding is not made on an issue which appears from the record to exist, that it was determined in favor of or in support of the judgment.
 
 Smith v. Janesville
 
 (1870), 26 Wis. 291;
 
 Bautz v. Adams
 
 (1907), 131 Wis. 152, 111 N. W. 69.
 

 We cannot agree with the defendant that there was an adequate administrative remedy available to the plaintiffs. The answer to the amended complaint alleged that, after a meeting, the Racine county planning commission informed the defendant through the office of the zoning administrator that the defendant was in business prior to the passing of the Racine county zoning ordinance and he could continue his business. The action on the part of the planning commission was not such an administrative order, determination, or decision that would entitle the plaintiffs to appeal therefrom under the zoning ordinance to the board of adjustment. From the record it appears that the planning commission is
 
 *454
 
 a committee of the Racine county board of supervisors created by an ordinance of the Racine county board. At no place are its duties set forth. Nor does the ordinance provide for appeals from or any procedure for hearings by the commission. It was testified the hearing was not a public hearing, the witnesses were not sworn, no minutes of the meeting were kept, and the purpose of the meeting was to help out the town officials. The notice of the hearing, the so-called “unsworn affidavits,” and other material relating to the hearing were offered in evidence. The planning commission having no duty or authority to make any determination or decision of whether the defendant’s automobile-wrecking business was or was not a nonconforming use, its action was immaterial on that question when offered in evidence. The trial court was not in error in ruling Exhibits D and F were inadmissible.
 

 On appeal, the defendant argued that the action of the planning commission, upon being sent to him by the zoning administrator, became the administrator’s decision and an appeal to the board of adjustment should have been taken by the plaintiffs from that decision. The zoning administrator testified the action of the planning commission was not his decision and, in effect, he merely relayed by letter to the defendant what the planning commission decided. Under these circumstances, it cannot be claimed that such a letter on behalf of the planning commission was a decision, determination, or order by an administrative officer from which the plaintiffs were entitled to appeal to the board of adjustment.
 

 The defendant further argued that the granting of the zoning permit was such an order and the plaintiffs were aggrieved parties and should have appealed. However, the plaintiffs had no knowledge of the issuance of the zoning permit which was a building permit and is so designated in the ordinance. The plaintiffs had no objection to a shed being built on the defendant’s property in connection with the
 
 *455
 
 conduct of his garage business. The mere fact that the plaintiffs lived next to or in the vicinity of the defendant’s premises was not sufficient under the facts of this case to give them notice of the use of the shed, nor were they required to examine the records of the administrative officer to determine whether or not their interests were affected. The defendant was not only operating a garage, but also conducting the alleged unlawful automobile-wrecking yard. The construction of the shed did not impart notice of its use to the plaintiffs and, if the plaintiffs had asked the administrative officer regarding the use of the shed, his records did not indicate that it was to be used in connection with the wrecking yard. The application was significantly silent in disclosing its use.
 

 We cannot hold that the plaintiffs were aggriéved persons within the meaning of the ordinance and a determination made by an administrative officer from which the plaintiffs were required to appeal. The defendant relies on
 
 Ferch v. Schroedel
 
 (1942), 241 Wis. 457, 6 N. W. (2d) 176,
 
 State ex rel. Morehouse v. Hunt
 
 (1940), 235 Wis. 358, 291 N. W. 745, and other cases. These cases are not in point. An adjoining or nearby property owner who has no notice of an administrative order, has no knowledge of such order, and has not participated in the proceedings resulting from the order, cannot be deemed to be an aggrieved party who is required to appeal within the meaning of the zoning ordinance. The Racine county ordinance does not provide any procedure by which property owners may institute complaints or for the holding of hearings by the administrative officer on such complaints. It has been held that the adjoining property owners are not aggrieved parties under substantially similar situations.
 
 State ex rel. A. Hynek & Sons Co. v. Board of Appeals
 
 (1954), 267 Wis. 309, 64 N. W. (2d) 741, 66 N. W. (2d) 623;
 
 Evans v. Roth
 
 (1947), 356 Mo. 237, 201 S. W. (2d) 357. As said in
 
 *456
 

 Fidelity Trust Co. v. Downing
 
 (1946), 224 Ind. 457, 463, 68 N. E. (2d) 789:
 

 “To hold otherwise would be to hold that every property owner in any particular district would be compelled to take notice of every action of such officer or board.”
 

 The same reasoning applies to the occupancy permit which was issued automatically upon the completion of the shed. This permit was not offered in evidence. The testimony shows, however, that the administrative officer did not know the purpose for which the shed was to be used, and each of the administrative officials,
 
 i.e.,
 
 zoning administrator and deputy zoning administrator, stated he issued the permit either by direction or by implication of the other. A certificate of occupancy, or occupancy permit, may be issued under the zoning ordinance only when the building and the proposed use thereof conforms to all the requirements of the ordinance. It is clear from the record that this permit was issued in violation of the ordinance by one who misunderstood the ordinance and who did not determine whether the proposed use of the shed conformed to the zoning ordinance. No one knew of the issuance of this permit except the defendant and the office of the administrative officer. Under the circumstances, this is not such an administrative order which required the plaintiffs, who were then engaged in a lawsuit with the defendant, to appeal.
 

 : There is no requirement in sec. 59.97 (8), Stats.,
 
 [1]
 
 that an owner of real estate in the district must appeal an administrative decision ás a condition to exercising his right to enforce compliance of the ordinance. The words “aggrieved party” as used in the ordinance have a much-more-limited meaning than the language of this section. Even
 
 *457
 
 without this express authority, a private person may enjoin a violation of an ordinance when there is no practical remedy. Actions for penalties are brought by public authorities, not private citizens, and there may be cases where a private person has suffered irreparable damage which is special and different than that suffered by the general public.
 
 Holzbauer v. Ritter
 
 (1924), 184 Wis. 35, 198 N. W. 852. We conclude that the trial court was not in error in holding that the plaintiffs could commence a suit under sec. 59.97 (8), Stats.
 

 2.
 
 Does the evidence sustain the finding of the trial court?
 
 It is contended that the trial court gave no weight to the administrative determination of the zoning administrator and his deputy that the defendant’s use of his premises constituted a valid nonconforming use. We have reviewed the record. We do not find that the trial court did not take into consideration the actions of the zoning administrators in granting the building permit and occupancy permit. The trial court was not bound by their action. In considering their testimony the court gave it such weight as it deserved under the circumstances. There was other testimony that the defendant first engaged in the automobile-wrecking business no earlier than 1953. Some testimony on behalf of the defendant showed he salvaged automobile parts on a very limited basis incidental to his garage business prior to July 6, 1949. Such acts did not constitute conducting an automobile-wrecking yard. The defendant’s records for 1949 did not disclose any purchase or sale of used or scrapped automobiles or the sale of salvaged metal. The first recorded purchase of a junked automobile was in 1953. No such purchases were shown in 1954, but the defendant’s records showed approximately 10 invoices indicating sales of scrap metal in 1955. Prior to 1958 the defendant stored and accumulated the majority of his junked automobiles less than
 
 *458
 
 750 feet from the center of the highway and burned automobiles within that distance.
 

 The defendant was employed full time in Milwaukee until March 21, 1949, less than four months prior to the passage of the zoning ordinance. He conducted an open house, or grand opening, of his garage business in September, 1949, and purchased his first tow truck in November or December of that year. His state income-tax return for 1949 describes his business as “garage” and shows no inventory at the close of that year. The 1949 personal-property tax return showed property of less than $80 consisting of greases, oils, gas, and parts only. The first reported sale, purchase, or inventory of wrecked cars was in his 1955 return, in which year he also reported for the first time income from junk. In 1950, the defendant advertised himself in the telephone book as operating a garage. There was no reference to automobile wrecking or junking. In 1955, such advertising did include automobile wrecking. There • are also in the record exhibits consisting of photographs taken during 1952 and 1954 which do not show any wrecked or junked vehicles on the defendant's premises. It is the duty of the trial court to determine the credibility of the witnesses, and the record discloses that one of the witnesses for the defendant expressed such little regard for the sanctity of the oath as to destroy his credibility. The findings of fact of the trial court were not contrary to the great weight and clear preponderance of the evidence.
 

 3.
 
 Estoppel.
 
 The defendant contends that the plaintiffs are estopped from maintaining this action because the defendant has built up a substantial business. The question was not directly passed upon by the trial court and was not raised as an issue in the pleadings by the defendant. Where an issue is neither pleaded nor litigated in the trial court, this court ordinarily will not consider it on appeal, and we do not propose to do so in this case.
 
 Murphy v. Martin
 
 (1883), 58 Wis. 276, 16 N. W. 603.
 

 
 *459
 
 4.
 
 Are the defendant’s salvaging operations a conforming use?
 
 We find no merit in the defendant’s contention that because the zoning ordinance prohibits in commercial district “A” the wrecking of vehicles and the storage of salvaged parts, and only prohibits in commercial district “B” the operation of automobile-wrecking yards, that salvaging and storing of parts therefrom on the premises is a conforming use in commercial district “B.” In district “A” the ordinance prohibits the acts of wrecking automobiles and the storage of parts salvaged therefrom as incidental to the operation of a filling station. The business of operating an automobile-wrecking yard is not permitted in district “A” because it is not one of the specified uses allowed. In district “B” the ordinance prohibits the acts as a separate and distinct business of operating an automobile-wrecking yard and excludes such business under general retail and wholesale business uses. The concept of the automobile-wrecking yard business includes the salvaging of parts. The storage of parts which are salvaged as a part of the wrecking operation on the premises is prohibited. Perhaps the ordinance does not prevent the storage of automobile parts, whether new or used, or salvaged, in a garage when the salvaged parts are obtained from some source other than the wrecking of cars on the defendant’s premises.
 

 Trial was had on the basis that salvaging of parts and burning of vehicles was done in the defendant’s operation of the automobile-wrecking yard. This construction of the meaning of an automobile-wrecking yard was part of the pretrial stipulation and order and was binding on the court and the parties. See
 
 Hansen v. Oregon,
 
 ante, p. 399, 105 N. W. (2d) 815.
 

 5.
 
 Nuisance.
 
 The last question raised by the defendant is whether the operation of the automobile-wrecking yard constituted a private nuisance. The gist of the complaint was that the defendant’s operation in burning the junked vehicles caused such serious, material, and permanent injury to the
 
 *460
 
 plaintiffs by reason of the smoke, smells, and stench, as to constitute a nuisance. The injunction on this ground enjoined only the burning of automobiles at any time on the defendant’s premises, but not the rest of the defendant’s business, as the defendant argues. The injunction based on the violations of the zoning ordinance enjoined the defendant from conducting an automobile-wrecking yard, and included the burning of vehicles as a part of that use of the premises. There was no pleading or issue that the entire wrecking-yard operation constituted a nuisance. Sec. 280.01, Stats., provides for an action to abate a private nuisance. The trial court granted an injunction on the authority of
 
 Pennoyer v. Allen
 
 (1883), 56 Wis. 502, 14 N. W. 609, which we agree rules this case. The plaintiffs’ cause of action for nuisance is basically an action in equity for abatement.
 
 Kamke v. Clark
 
 (1955), 268 Wis. 465, 67 N. W. (2d) 841, 68 N. W. (2d) 727. During the years 1956-1958, the defendant’s operation in burning automobiles created extremely black, dense smoke containing soot to a large degree, as well as smells predominately of burning rubber, oil, and grease. Some plaintiffs live adjoining the defendant’s property and other plaintiffs live nearby; one has a residence, a tavern, and picnic ground; another has a residence and greenhouse; another has only a residence. On occasion smoke penetrated the plaintiffs’ residences and left quantities of soot on furniture and walls. The smell was offensive and noxious. Even though a business may be lawful, nevertheless it may be conducted in such a way as to amount to a nuisance either because of its location, as in
 
 Hasslinger v. Hartland
 
 (1940), 234 Wis. 201, 290 N. W. 647, or because of the effect of the operation.
 

 While
 
 Pennoyer v. Allen, supra,
 
 is the leading case on what amounts to a nuisance, this court has passed upon the question many times since. In
 
 McCann v. Strang
 
 (1897), 97 Wis. 551, 72 N. W. 1117, this court stated that a lawful
 
 *461
 
 trade carried on in close proximity to a dwelling house could constitute a nuisance and that the test was whether the particular trade was of such a character as would be likely to be physically annoying to a person of ordinary sensibilities. The distinction between nuisances
 
 per se
 
 and other nuisances was pointed out in
 
 Rogers v. John Week Lumber Co.
 
 (1903), 117 Wis. 5, 93 N. W. 821. See
 
 Holman v. Mineral Point Zinc Co.
 
 (1908), 135 Wis. 132, 115 N. W. 327 (sulphuric-acid plant in close proximity to plaintiff’s property);
 
 Anstee v. Monroe Light & Fuel Co.
 
 (1920), 171 Wis. 291, 177 N. W. 26 (gas plant from which smoke was so thick and odor so bad as to affect the comfort, if not the health, of the plaintiff). In
 
 Dolata v. Berthelet Fuel & Supply Co.
 
 (1949), 254 Wis. 194, 36 N. W. (2d) 97, this court held that a business which necessarily impregnates the atmosphere with disagreeable, unwholesome, or offensive matter may become a nuisance to those occupying adjacent property when such property owners are substantially impaired in the comfort and enjoyment of their premises. Smoke is not a nuisance
 
 per se,
 
 but smoke and soot and offensive odors may constitute a nuisance in fact when they interfere with the use and enjoyment by persons of ordinary sensibilities of their property.
 

 The defendant contends the injunction should only enjoin him from operating the automobile-wrecking yard in such a manner that the burning operations would not constitute a nuisance to the public. The difficulty with this argument is that the burning of automobiles is not a permitted use under the ordinance. Furthermore, the defendant did not show that such burning of automobiles can be done without serious injury to these plaintiffs’ use of their property. Although the defendant has not burned automobiles since 1958, there is no evidence that he has permanently ceased burning automobiles. The evidence indicates that he would continue to do so if not enjoined. We believe the trial court correct in
 
 *462
 
 granting the injunction enjoining the defendant from burning automobiles because it constituted a private nuisance. An injunction looks to the future and it is the proper remedy to abate the contemplated acts when in the past similar acts have caused sufficient harm to the plaintiffs to constitute a nuisance.
 

 The plaintiffs’ brief exceeded 50 pages. Permission is requested pursuant to Supreme Court Rule 10, sec. 251.264, Stats., to tax costs for the additional pages. We believe a brief of 50 pages would have been adequate to answer the defendant’s brief even though it also exceeded 50 pages, and therefore permission to tax costs for the additional pages is not granted.
 

 By the Court.
 
 — Judgment affirmed.
 

 [1]
 

 “Such ordinances shall be enforced by appropriate fines and penalties. Compliance with such ordinances may also be enforced by injunctional order at the suit of such county or the owner or •owners of real estate within the district affected by such regulation.”